## SLATTER *v.* TETE.

Where in a settlement between the father and the heir of the mother of the community which formerly existed between the parents, notes, which had been given by the husband of the heir for a loan previously made to him by the father, formed a part of the effects to be divided, and were received by the wife as her portion of the effects of her mother's succession, and delivered by her to her husband, the receipt of the notes and their delivery to the husband will not create a legal mortgage, in favor of the wife, on the property of the husband, in the absence of proof that the husband was solvent at the time his notes were delivered to him as his wife's share of the succession. In such a case the burden of proof is on the party claiming the legal mortgage. If the husband was insolvent at the time he received the notes, the wife has no mortgage for their amount. C. C. 3280, 2367.

APPEAL from the District Court of Assumption, *Randall*, J. *Preston*, for the appellant. *J. C. Beatty*, for the defendant. The judgment of the court was pronounced by

EUSTIS, C. J. The plaintiff, who is a judgment creditor of the late *Auguste Tete*, applied to the court for the sale of certain slaves belonging to his succession, to satisfy his debt. His judgment was recorded on the 30th May, 1842. The defendant, who is the surviving wife of the deceased, claims a prior mortgage on the slaves, resulting from the partition of the estate of her deceased mother, and the receipt of $17,849 35, of her paraphernal effects, on the 12th June, 1838, which her husband converted to his own use, he having the admin-

SLATTER
*v.*
TETE.

istration and enjoyment of the same until his death, which took place on the 16th July, 1846. The District Court gave precedence and effect to the claim set up by the defendant, and recognized the general mortgage on the succession, by virtue of the receipt and conversion of the paraphernal effects of the wife by the deceased husband. The plaintiff has appealed.

It appears that, on a settlement of the community which had existed between the defendant's deceased mother and her father, made extrajudicially before a notary in New Orleans, on the 12th June, 1838, the share of the defendant was found to amount to the sum of $17,849 35. On the same day, in a notarial act, she acknowledged to have received that amount from her father; and in that act, to which her husband was a party, she declares her intention of leaving to her husband the administration of this sum, the amount of her hereditary rights, which he acknowledges to have received, and to become indebted to his wife therefor. In fact, however, there was no money paid by the father to either husband or wife, under this settlement.

Among the effects to be divided between the father and the heirs of the deceased mother, were several notes drawn by *Auguste Tete*, the defendant's husband, to the order of the father, and appear to have originated in a loan made previously by the father to his son-in-law. The portion of the defendant in her mother's succession, was received by her in the notes of the husband, which she delivered up to him.

These facts present the naked question, whether the receipt of these notes and the delivery of them to the husband under the circumstances thus stated, constitute a legal mortgage in favor of the wife on the property of the husband.

Article 3280 of the Code, which provides that no legal mortgage shall exist except in *cases determined by the present Code*, limits the enquiry as to whether the Code has given a mortgage to the wife in cases of this kind. The article under which the district judge gave the defendant her legal mortgage is the 2367th. It provides that: "The wife may alienate her paraphernal property with the authorization of her husband; or, in case of refusal or absence of the husband, with the authorization of the judge; but should it be proved that the husband has received the amount of the paraphernal property thus alienated by his wife, or otherwise disposed of the same for his individual interest, the wife shall have a legal mortgage on all the property of the husband for the reimbursement of the same." The decisions which have been made by our predecessors on this article, we do not understand as extending its operation beyond cases in which the husband receives money belonging to his wife, or has disposed of her property for his individaul benefit. *Johnson* v. *Pilster*, 4 Robinson, 73. *Campton* v. *her Husband*, 6 Robinson, 157. *Turner* v. *Parker*, 10 Robinson, 154.

In the case of *Compton* the wife was allowed her legal mortgage for the portion of the price of purchases made by the husband at the sales of the succession of her father and mother, which portion the husband retained, having settled for the balance of the price with the other heirs. He thus received her share of those successions in property without paying for it, and his estate was benefited by so much. The fact was incontestable that her property had inured to his benefit.

In the present case the debt had previously existed. It has been permitted to remain as it originally stood, and to what extent it has inured to the benefit of the debtor is a matter of conjecture, resting for its certainty entirely on the state of his affairs. Of this we have not the proof which the article itself requires.

This article has a feature not usual in the Code. It imposes the burthen of proof on the party claiming the legal mortgage; and when it is considered that the mortgage is tacit—not recorded, and that there are no means by which the public is notified of the receipt of the paraphernal property by the wife or the husband, the necessity of this provision is obvious, as well as that of strictly observing it.

In point of fact there was nothing transferred to the wife, but a preëxisting debt of the husband. This debt bore neither privilege nor mortgage, and the only security the creditor had, consisted in the means and will of his debtor to pay. It seems to be a paradox, that by the transfer of this note to the wife and its delivery to the husband, this debt should be invested with the real security of a mortgage, to the detriment of other creditors. A construction which would operate this injustice, we cannot adopt. The abuses to which it would inevitably give rise, are an insuperable objection to its soundness. The object of the law is to protect married women in their just rights, and not to enable them to wrong their husband's creditors. This construction virtually calls upon the court to add another case to those provided in the article of the Code, in which the wife has a tacit mortgage on her husband's estate, to wit, when she receives his notes as paraphernal property and hands them to him.

To conclude: if the husband's estate is solvent, the wife can loose nothing by it; if it is insolvent, she has not, in our opinion, proved a case within the provisions of article 2367.

The circumstances of the case were such as to throw upon *Mrs. Tete* the burden of showing the solvency of her husband, at the time his notes were delivered to him as his wife's share of the succession of her mother. The notarial receipt executed in favor of *Gabaroche* by *Mrs. Tete* and her husband, is so framed as to disguise the manner in which the share was settled for, and give it the appearance of a cash settlement. When the testimony of *Gabaroche* and his son was first taken in this cause, on behalf of *Mrs. Tete*, both deposed that the share of *Mrs. Tete* was paid to her in cash. It was only upon a subsequent examination, at the instance of the plaintiff, that the true manner of the payment was developed.

The judgment of the District Court directing the claim of the defendant to be paid by preference over that of the plaintiff out of the proceeds of the slaves ordered to be sold, is, therefore, reversed; and it is further ordered that the proceeds of said slaves be applied to the payment of the plaintiff's judgment, in preference to the claim set up by the defendant; he paying the costs of this appeal and those of this suit in the District Court.